# COMBS v. ROUNTREE CONSTRUCTION COMPANY, Appellant.

### Division Two, July 1, 1907.

1. **MASTER AND SERVANT: Safe Place.** The duty of the master to exercise reasonable care to provide a reasonably safe place in which his servant is required to work, is a primary duty; one that he cannot delegate to any servant so as to escape liability for a negligent exercise thereof.

2. ——: ——: **Fellow-Servant.** Where defendant by its foreman undertook to furnish plaintiff carpenter a reasonably safe step to stand on while he nailed a brace to protect a wall from the wind storm, plaintiff had a right to act upon the assumption that it had been safely done, in the absence of knowledge to the contrary; and if that step was prepared by two carpenters under the immediate direction and eye of defendant's foreman, and was negligently done, the negligent act was that of defendant and not that of fellow-servants (the carpenters) of plaintiff.

3. ——: ——: **Materials: Entrusted to Servants.** Where the defendant through its foreman selected the timber for a brace for a wall against a threatened wind storm, and the material out of which cleats were to be nailed to the brace for plaintiff to stand on while he nailed the brace to the wall, and the foreman conceived and planned the brace, and commanded other carpenters to nail on the cleats and stood by while they did so, and ordered plaintiff, who was not working with the carpenters who nailed on the cleats, to co-operate in the work of fastening the top-end of the brace to the wall when it was hoisted to its place, the principle that where a master supplies his servants suitable material and appliances to work with and entrusts to them the selection of the material and the manner of using it, then for the negligence of the servant in selecting the material or in the construction of the appliance the master is not liable, does not apply. For, in such case, the foreman, who was defendant's vice-principal, did not leave to the discretion of the carpenters or plaintiff either the selection of the material or the manner of doing the work.

4. ——: ——: **Fellow-Servant: Assumption of Risk.** The mere fact that two carpenters, under the direction and supervision of defendant's foreman, nailed the cleats to the brace, which gave way when plaintiff stepped upon them, will not relieve defendant of liability for the defective appliance, the preparation of which was in no manner entrusted to or assumed by them.

5. ——: ——: **Duty of Foreman.** The whole appliance having been planned and prepared under the immediate supervision of defendant's foreman it was his duty to have seen that the appliance was reasonably safe and secure for plaintiff to work upon before ordering him to use it.

6. ——: ——: **Evidence: Experts: Sufficiency of Nails.** The number of nails necessary to render safe cleats upon which plaintiff was required to stand while fastening a very high brace-timber to a wall, is not a matter of such common knowledge that every person is presumed to be able to form a just and exact opinion upon it, and hence it was not error to permit carpenters to give their opinions of the number of nails necessary, the question being a vital one in the case.

7. **EVIDENCE:** *"Ought" in Sense of Necessary.* The use of the word "ought," in the question, "How many nails ought to be put in?" was evidently used in the sense of necessary, and was not objectionable.

Appeal from St. Charles Circuit Court.—*Hon. H. W. Johnson,* Judge..

AFFIRMED.

*Wise & McNulty* and *Seddon & Holland* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by defendant at the close of all the evidence. Said instruction should have been given because, under the evidence, the act of negligence complained of by plaintiff was not the act of defendant but the act of a fellow-servant. Forbes v. Dunnavant, 95 S. W. 934; Bowen v. Railroad, 95 Mo. 277; Herbert v. Wiggins Ferry Co., 107 Mo. App. 287; Ross v. Walker, 139 Pa. St. 42; Armour v. Hahn, 111 U. S. 313; Richards v. Hayes, 45 N. Y. Supp. 234; Jones v. Packet Co., 43 Mo. App. 203; Kennedy v. Spring, 160 Mass. 203; Oelschiegel v. Railroad, 73 Minn. 327; Ferguson v. Galt, 27 Ont. App. 489; Colton v. Richards, 123 Mass. 484; Kelly v. Norcross, 121 Mass. 508; Beesley v. Wheeler & Co., 103 Mich. 196 (27 L. R. A. 266); Howard v. Hood, 155 Mass. 391; Dewey v. Parke, Davis & Co., 76 Mich. 631; Adasken v. Gilbert, 165 Mass. 443; Fraser v. Lumber Co., 45 Minn. 443; Peschel v. Railroad, 62 Wis. 338; McGinnity v. Athol Reservoir Co., 155 Mass. 183; O'Connor v. Rich, 164 Mass. 560; Johnson v. Boston Tow Boat Co., 135 Mass. 209; Miller v. Railroad, 175 Mass. 363; Allen v. Iron Co., 160 Mass. 557; Hoar v. Merrill, 62 Mass. 386; Cregan v. Marston, 120 N. Y. 568; Pfeiffer v. Dialogue, 8 Am. Neg. Rep. 90; Hayes v. Railroad, 17 Am. Neg. Rep. 542; Callahan v. Trustees, 180 Mass. 183. (2) The court erred in giving instruction A at the instance of plaintiff: (a) Because said instruction improperly states the law in reference to fellow-

servants. See authorities cited under point 1. (b) Because there was no evidence upon which to base said instruction. Stone v. Hunt, 114 Mo. 66; Evans v. Interstate Co., 106 Mo. 594; Wilkerson v. Eilers, 114 Mo. 245; Yarnell v. Railroad, 113 Mo. 570; Woods v. Campbell, 110 Mo. 572. (3) The court erred in giving instruction B at the instance of plaintiff, because there was no evidence upon which to predicate same. See authorities cited under point 2b. (4) The court erred in overruling defendant's objection to certain questions asked plaintiff as an expert, and also in refusing to strike out the answers of said witness upon motion of defendant. Minnier v. Railroad, 167 Mo. 99; Chrismer v. Railroad, 92 S. W. 378.

*A. R. Taylor* for respondent.

(1) Appellant's first contention is that its demurrer to the evidence should have been sustained because the acts of negligence complained of were not the acts of appellant but of fellow-servants. We meet this contention with the distinct claim that the negligence complained as causing the injury was the negligence of appellant's foreman; both the negligence in providing the brace with defective cleats to the respondent to work with and ordering him to get on the cleats whilst doing the work. We claim that the evidence for the respondent clearly shows that the negligence causing the injury was the negligence of the foreman; and, if so, the controversy ends on this point. If Christofell was the foreman for appellant in charge of this work, with authority from appellant to control the work and manner of doing the same, and to provide the means and appliances for doing the work, and authority to command and control the servants under him, including the respondent, as to the work they should do and the manner of doing, then he was the *alter ego* or vice-principal of appellant in

these matters, and appellant was and is responsible for the manner in which these duties were performed. The rule is that it is the duty inherent in the master that he shall exercise ordinary or reasonable care in providing means and appliances reasonably safe and suitable for the servant to work with in the discharge of the duties of his employment; also that he will, in the conduct of the business, use such care in commanding and controlling the work of the servant to the end that he shall not be exposed to hazard not ordinarily incident to the service. These well-settled duties of the master he must perform, either in person or by his agent or vice-principal and he remains liable for their performance and can not escape responsibility for their non-performance, by delegating the performance of these duties to another, whether foreman, superintendent, boss, or another servant. Porter v. Railroad, 71 Mo. 78; Moore v. Railroad, 85 Mo. 594; Covey v. Railroad, 86 Mo. 643; Hoke v. Railroad, 88 Mo. 360; Bowen v. Railroad, 95 Mo. 278; Dayharsh v. Railroad, 103 Mo. 577; Sullivan v. Railroad, 107 Mo. 78; Miller v. Railroad, 109 Mo. 356; Russ v. Railroad, 112 Mo. 53; O'Mellia v. Railroad, 115 Mo. 218; Foster v. Railroad, 115 Mo. 180; Coontz v. Railroad, 121 Mo. 659; Donohoe v. Kansas City, 136 Mo. 670; Bane v. Irwin, 172 Mo. 317; Railroad v. Herbert, 116 U. S. 648. (2) The second ground of appellant's contention, and, in reality, the whole volume of his many contentions, may be couched in the single proposition that, where a master supplies to his servants suitable material and appliances to work with in their duties and entrusts to the servants the selection of the material which is to be used and the manner or mode in which it is used, then for the negligence of a servant in the selection of the material or appliance—or the construction of an appliance the master is not held liable. We agree to

this proposition.   The trouble with appellant's con-
tention and authorities is that they cannot be made to
fit the facts in this case.   And their   irrelevancy   does
not stand the legal test.   First, the evidence without
dispute shows that appellant did not provide the ma-
terial and appliance in this case, and leave to the ser-
vants the entire work of providing the cleat on the
brace.   The evidence is clear that the master's vice-
principal conceived the work of providing the brace
with the cleats on it.   He told the men to get the brace
for the purpose.   He commanded the men to nail on to
the brace the two cleats in question.   He stood by
watching the men whilst the two braces were being
nailed on to the brace.   He saw how it was being done.
He was in five feet of the men who were nailing on the
two braces looking at the work.   (3)   The foreman was
not a fellow-servant with respondent.   This   court,
speaking to this precise point, holds:   "The foreman
in directing plaintiff's work, what he was to do, where
he was to do it and how he was to do it, was perform-
ing the master's duty *pro hac vice* and was a vice-prin-
cipal."   Bane v. Irwin, 172 Mo. 317, citing Donohoe v.
Kansas City, 136 Mo. 670; Miller v. Railroad, 109 Mo.
350; Russ v. Railroad, 112 Mo. 45; Moore v. Railroad,
85 Mo. 588.

GANTT,  J.—This   action   originally   instituted
in the circuit court of the city of St. Louis, on change
of venue was sent to the circuit court of St. Charles
county, where it was tried.   The petition alleges that
on the seventh day of July, 1902, plaintiff was in the
employ of the defendant, the Rountree Construction
Company, in the capacity of a carpenter, and was en-
gaged for said company in assisting in constructing a
wall for the Industries Building at the World's Fair
grounds in the city  of St. Louis, on which building the
defendant   was   a   contractor.   That   on   the   last-
mentioned  day   whilst  plaintiff   was   in   the   due

discharge of the duties of his employment, he was engaged in taking a rope off of a brace about thirty-five feet above the ground, and whilst so doing, a cleat or step on said brace, designed by the defendant and furnished by the defendant for the plaintiff to be upon and to support him whilst doing said work, broke and caused the plaintiff to fall to the ground, breaking his right leg between the knee and the ankle, crushing and breaking the bones, and so injuring said leg as to necessitate its amputation on the fourteenth of July, 1902. And he was otherwise bruised and permanently injured. The charges of negligence in the petition are that the defendant was negligent in providing for the plaintiff's use a cleat or step which was improperly and insecurely nailed and fastened to said brace and was too weak to sustain plaintiff's weight thereon whilst engaged in doing said work; that defendant was negligent in providing plaintiff said appliance to be upon in the discharge of said duty of his employment, and that defendant's foreman in charge of said work was negligent in ordering and commanding plaintiff to do said work when said cleat was in such defective and insecure condition, as he knew, or by the exercise of ordinary care would have known in time to have averted said injury to plaintiff, which negligence of defendant and its foreman directly caused and contributed to cause plaintiff's said injury. That by reason of said injuries, plaintiff has suffered great pain of body and mind, and has been disabled from labor permanently and is maimed and crippled for life and has incurred large expense for medical attention and for medicine to the sum of fifteen thousand dollars.

The answer of the defendant was a general denial and general plea of contributory negligence and a plea of assumed risk.

The trial resulted in a verdict and judgment for the plaintiff for seven thousand five hundred dollars. After an unsuccessful motion for new trial, the defendant perfected its appeal to this court.

The testimony tends to show that the defendant company on the seventh of July, 1902, and for some months prior thereto, had been engaged as a contractor in the erection of the Varied Industries Building at the World's Fair grounds in the city of St. Louis, and for several months plaintiff had been working for the defendant in connection with this work in the capacity of a carpenter. His work called upon him to do considerable climbing and to work at considerable heights. Plaintiff was twenty-nine years old at the time, and had been a carpenter for thirteen or fourteen years. On the day in question, the wall had been raised in skeleton form about fifty feet high, and about quitting time a windstorm threatened, and the foreman in charge, wishing to secure the unfinished wall against the danger from the wind, requested the plaintiff, when the whistle blew to stop work, to remain on the wall to fasten the upper end of a brace, which the foreman directed to be put up against the pillar to secure and strengthen it; this brace, when in position, rested with one end on the ground and the top end against the pillar and stood up about an angle of forty-five degrees. The brace was about thirty-five feet long. The foreman selected this brace and caused his other employees on the ground to bring it to the wall and directed two carpenters, who were working in the same gang with the plaintiff, to nail two cleats on the brace for plaintiff to stand on while removing the rope therefrom. The cleats were ordered to be nailed near the top end of the brace when it should be erected and were nailed on while it lay on the ground and before it was hoisted, in the immediate presence and sight of the foreman. These cleats were

made out of a piece of plank eighteen inches long and
about seven-eights of an inch thick and six inches wide;
one of the carpenters on the ground split this piece
into two pieces to make the two cleats, and the plain-
tiff testified that Mr. Christofell, the foreman, stood
there and instructed them to nail it on. The foreman
was standing about five feet away from the cleats while
the two carpenters were nailing them on the brace. On
cross-examination he testified as follows: ''Q. He
continued to look at them until they had nailed both
cleats on, did he? A. I could not say that. I had to
attend to my work, I was not watching him all the time.
Q. You do not remember whether he continued to
watch them and saw them nail the cleats on? A. At
the time I seen him, he was standing about five feet
from the cleats and watching them put them on. Q.
But whether his attention was called to something else
before he finished, you do not know? A. No, I do not
know.'' The brace was then hoisted by means of a rope
at the top end and placed against the wall; after the
brace had been so raised and was in position, the plain-
tiff testified that the foreman told him to let the rope
down and he would send him up a block of wood to nail
over the top of it; to do this plaintiff had to step out
on one of the cleats that had been fastened to the brace
in order to get the rope. He stepped on the top cleat
to unfasten the rope and as he stepped on it and got
his hand pretty near the rope, the cleat gave away and
he fell about thirty-five feet to the ground. Several
witnesses testified that they examined the brace and
cleats immediately after plaintiff fell and found one
cleat broken off on one side, one side had pulled out,
that is, the nail had pulled out. The cleat was fastened
to the brace by two eight-penny nails. These witnesses,
one of whom was a superintendent of construction for
the defendant at that time, and another carpenter, tes-
tified that in the ordinary course of business where a

cleat was to be nailed on under such circumstances, to support the weight of a man, not less than four nails should be put in the cleat in order to make it reasonably safe. On cross-examination plaintiff stated that during the time he worked for defendant he did a good deal of climbing to get the 6x6 timbers up that constitute the wall. It was necessary to tie a rope around them to raise them up, they were raised by steam power. Plaintiff's work in this connection was mostly to untie them; he knew that the brace was a 6x8 timber. One end of the rope was fastened to the brace and the other end was on the ground. When the brace was in position, witness was to fasten it by nailing cleats along its side from the brace to the upright. He testified that from his position on the wall, he saw the two carpenters, whose names he did not know, nailing the cleats onto the brace. He stated that if he had known how many nails were in it, he never would have got on it. He saw them in the act of nailing, but did not see how many nails they put in it. He stated also that the foreman pointed out the piece of timber out of which the cleats were made, to the carpenters. The brace was yellow pine. He testified also that he weighed about one hundred and fifty-five pounds; that in his opinion, as a carpenter, it would take four eight-penny nails to hold that weight; two such nails would not hold his weight; the strength depends also on the different ways of driving the nails in.

On the part of the defendant, the evidence tended to contradict the plaintiff's evidence and to show that two nails in the cleat were sufficient. Mr. J. C. Settle testified that he was in the contracting and building business and had had about fifteen years experience as contractor and engineer in the construction of buildings, and gave it as his opinion that two eight-penny nails would be ample to hold a cleat eighteen inches long and seven-eighths of an inch thick nailed to a

brace 6x8 inches when a man's weight is placed upon
it; that it would be sufficient to support three hundred
and fifty to five hundred pounds. He testified that he
had made an actual experiment to test it.

Mr. Henry Christofell testified that he was a car-
penter and had been   for twenty years and on the
seventh of July, 1902, was foreman of carpenters and
had charge of the gang of carpenters in which plaintiff
was working; that plaintiff had been assisting in the
construction of walls and in bracing walls. He had had
a good deal of experience in that direction and was a
good climber; that along in the evening about four
o'clock it began to rain, and they were bracing the wall
at the time the whistle blew. The whistle was a signal
for the men to quit. They were all union men and
obeyed the whistle. Witness looked up at plaintiff
and asked him to remain upon the wall and fasten the
timber. The brace at that time was up against the
wall ready to be fastened. He also told Mr. Fritz,
another one of the carpenters, that he had better stay
and help fasten the timber; that thereafter witness
turned and the plaintiff fell. He denied directing plain-
tiff to go out on the timber and unfasten the rope; he
denied also that he told him to lower the rope, that he
would send him up cleats or timbers to support the
braces; that if plaintiff needed other cleats he could
have used the other end of the rope. He also testified
that two eight-penny nails were sufficient to secure the
cleat. That when they were getting the rope to raise
this brace witness had instructed one of the carpenters
to nail the cleat so that when the timber was placed in
position and fastened, they could get out on these cleats
and loosen the rope. It was simply a foot rest and
support in climbing down. He could not testify that he
saw these cleats nailed on the timber. He ordered the
carpenter to nail them on. He does not recall the name
of the man he asked to nail the cleat on. He was one of

the same gang that plaintiff worked in under the witness. On cross-examination he stated that he directed the brace in question to be raised and had the cleats put on the brace and that he saw it done. He also stated that these cleats were put on the brace for a man to get out on, that was their purpose. From the accompanying statement and summary of the evidence, it is apparent that the facts of this case are not complicated and the contradictions very few and yet the conclusions of law drawn by the respective counsel for plaintiff and defendant are widely divergent.

I. On the part of the plaintiff it is insisted that the testimony discloses that the master through its vice-principal and foreman, Mr. Christofell, negligently furnished plaintiff an insecure and unsafe appliance upon which to do the work which it required him to do and by reason thereof he was injured and hence it is liable; whereas on the part of defendant it is insisted, first, that fastening the cleats with two eight-penny nails was sufficient to make them safe, and, secondly, that assuming that the plaintiff's theory is correct and that the brace was insufficiently nailed with two eight-penny nails when there should have been at least four, and that the cleat broke off or gave way on that account, the negligence in the case was that of the two carpenters who nailed them and as they were members of the same gang with plaintiff and under the same foreman, they were fellow-servants with plaintiff and defendant is not liable to plaintiff for their negligence. It is urged that, as the foreman did not direct the carpenters in preparing the brace to use two nails only in attaching the cleats to the brace-timber or in what direction to drive them and did not restrict them in the use of nails of which there was an ample supply, the carpenters alone were guilty of negligence and not the foreman. In our opinion this is a very narrow view to take of the respective obligations of the defend-

ant and the rights of plaintiff. The duty of the master
to exercise reasonable care to the end that the place in
which his servant is required to work is reasonably
safe is a *primary duty* and one that he cannot delegate
to any servant high or low so as to escape liability for
a negligent act thereof. That Mr. Christofell was the
*alter ego,* the vice-principal in charge of defendant's
work, and that plaintiff was his servant, are admitted.
That the defendant, through Christofell, conceived the
necessity of bracing the unfinished wall or pillar so as
to protect it against the threatening windstorm and
that he devised the plan of bracing it with long timber,
he himself testifies; that he personally directed plain-
tiff to remain on the wall to secure the top end of the
brace when it should be erected and that he personally
directed the nailing of the cleats on the brace-timber
for the purpose of having plaintiff step on and stand
on it while disengaging the hoisting rope, appears by
his own testimony; that he pointed out the timber out
of which the cleats were made and that he stood within
five feet of the carpenters looking at them while they
were nailing on the cleats, appears in plaintiff's tes-
timony.

The fundamental question then is, whose duty was
it to provide plaintiff a reasonably safe place upon
which to stand while he carried out the foreman's
(Christofell) instructions to remove the rope and fas-
ten the top end of the brace to the upright pillar al-
ready in the wall, the foreman's or the fellow-servants,
the carpenters on the ground? We think it is too clear
for contradiction, first, that it was the master's duty
to devise the appliance or support for the wall and
to supply it, and if, as it did, it required plaintiff to
stand upon it to remove the rope and attach it by cleats
to the wall, to see that it was reasonably safe for him
to do so and the furnishing of this place for plaintiff
to work was a personal duty which it could not delegate,

but, secondly, not only was it the foreman's duty to furnish a safe place for plaintiff to stand in order to carry out the foreman's orders, but the testimony abundantly establishes that the foreman undertook to furnish the appliance on which plaintiff was to do his work in fastening the top end of the brace. The foreman did not order the carpenters on the ground to brace the wall and leave it to them to select the main brace-timber and decide whether they would nail cleats on it, and go away. He determined the necessity of bracing the building. He personally selected the long brace-timber, directed it to be brought to the foot of the wall. He says himself that he told one of his men to nail on the cleats. When pressed as to whether he did not see just how the cleats were attached or nailed to the main brace-timber, he said he could not say that he saw the cleats nailed on the timber, but plaintiff testified the foreman was standing in five feet of the men who were nailing the cleats and watching them put them on and Fritz testifies Christofell was there, when it was being done. Under all this evidence it cannot be fairly contended that the foreman himself did not furnish the brace with the cleats on it and that defendant is not responsible for his failure to see that it was made safe for plaintiff to stand on. The defendant by its foreman undertook to furnish plaintiff a reasonably safe step to stand on to release the rope and fasten the top of the brace-timber to the wall and plaintiff had a right to act upon the assumption that it had been safely done, in the absence of knowledge to the contrary, and there is nothing to show there was anything to call his attention to the insecure way in which the cleats were nailed. As between the plaintiff and defendant as to this appliance, the duty rested upon defendant and it could not devolve it upon the carpenters on the ground, and certainly it did not by the simple fact that two of them drove the nails in the cleats

under the direct supervision and at the order of the foreman. Their acts in so doing were the acts of defendant in furnishing an appliance which defendant was required to furnish plaintiff, and not the fellow-servants of plaintiff. As said by Judge SHERWOOD for this court in Sullivan v. Railroad, 107 Mo. l. c. 78, "The fact that Prather [Christofell] was present and ordered and superintended the removal [in this case the preparation of the brace] of the last section . . . was tantamount to a tacit assertion that it was safe for plaintiff to proceed with the removal of that section, and plaintiff was not bound to search for danger, but had a right to rely upon the judgment and discretion of defendant's foreman that he would fully perform the measure of his duty towards him." And so we say here that plaintiff having been required by Christofell, the foreman, to remain on the wall to fasten the top end of the brace and having seen Christofell select the timber and the cleats and heard him direct them to be nailed on and having observed his supervision of the preparation of the brace and the cleats, he had a right to rely upon the assumption that Christofell had done his duty in seeing that it was safe for him to stand upon and do the work he was ordered to do, and he did not assume the risk of danger for the negligent way in which it was prepared. In our opinion, the carpenters who did the nailing represented the defendant in its relation of master to plaintiff and not as fellow-servants of plaintiff, and the demurrer to the evidence was properly overruled.

II. But the learned and industrious counsel for defendant insist that where a master supplies his servants suitable material and appliances to work with in their duties and entrusts to the servants the selection of the material which is to be used and the manner or mode in which it is used, then for the negligence of a servant in the selection of the material or the con-

struction of an appliance, the master will not be liable. Abundant authority can be found to sustain this statement of the law, and is furnished by defendant's counsel. [Ross v. Walker, 139 Pa. St. 42; Bowen v. Railroad, 95 Mo. 277; Forbes v. Dunnavant, 198 Mo. 193; Herbert v. Wiggins Ferry Co., 107 Mo. App. 287; Armour v. Hahn, 111 U. S. 313; McGinty v. Reservoir Co., 155 Mass. 183; O'Connor v. Rich, 164 Mass. 560; Miller v. Railroad, 175 Mass. 363; Dewey v. Parke, Davis & Co., 76 Mich. 631; Beesley v. Wheeler & Co., 103 Mich. 196.] That these cases are not pertinent to the case in hand is apparent, for in this case the defendant through its foreman Christofell did not provide the material and leave to the other workmen the entire work of providing the brace with cleats on it. On the contrary the foreman selected the brace-timber and the piece of timber out of which to make the cleats and conceived and planned the brace to prop the wall. He stood by and commanded the men to nail the cleats on the brace and saw how it was being done, in a word, he originated the scheme for staying the wall against the windstorm and was present all the time directing the work to be done, and ordered the plaintiff to co-operate in the work by fastening the top end of the brace when it should be erected. It must be borne in mind at all times that in this case the plaintiff was not working with the gang at the foot of the wall or in any manner engaged in preparing the brace, and at no time did the foreman leave the matter to the discretion of the workmen either in the selection of the timber or the manner of constructing the brace.

A reference to the cases cited by the defendant will accentuate the distinction between those cases and the case at bar. Thus, in Bowen v. Railroad, 95 Mo. 277, the facts appeared to be that the defendant in the construction of its road built a temporary bridge over Grand river in Chariton county. This bridge was used

for the erection of the permanent construction there-
from and for the passage of the construction train.
Plaintiff and others, a gang of bricklayers, took the
evening construction train for their lodging place on
the east side of the river, and as the train was passing
over the bridge, about one hundred feet of it gave
way. The engine and several cars went down, and
the plaintiff, to save his life, jumped from the car and
landed in the river and received the injuries of which
he complained. There was no evidence that he was
guilty of negligence. It appeared that the plan of the
bridge was the standard plan for permanent wooden
bridges where there is no driftwood, and that the ma-
terial and timbers used were of standard size and good
quality. It appeared also that inspections were made
of the bridge by the superintendent three or four times
a day. The court refused to instruct that if the de-
fendant selected a competent person to plan the bridge,
good materials and competent mechanics, and if the
bridge was planned by such foreman and built by such
mechanics according to the plan and of such materials,
then defendant was not liable for defects in the con-
struction. In discussing the refusal to give this instruc-
tion, Judge BLACK, speaking for this court, said: "A
servant is not a mere machine, employed to drive a nail
here or a spike there, where directed by the master or
some one representing him. Many things involving
the exercise of judgment may properly be left to the
servant. Hence, it has been held, where the master
employs competent workmen, and provides suitable
material for staging and entrusts the duty of erecting
it to the workmen, as a part of the work which they
are engaged to perform, that he is not liable to one of
the workmen for injuries resulting to one of them from
the falling of the staging. The negligence in such cases
resolves itself into the negligence of a fellow-servant;
and the principle has been applied under a variety of

circumstances. [Kelly v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485; Armour v. Hahn, 111 U. S. 313; Peschel v. Railroad, 62 Wis. 338.] It is just as well settled that if the master undertakes to furnish structures to be used by the servant in the performance of his work, the master must use due care in the erection of the structure, and, if there is negligence on his part, or negligence on the part of someone representing him in that respect, he is liable for injuries sustained by the servant. [See authorities just cited; Arkerson v. Dennison, 117 Mass. 407.] Now in this case it was no part of the duty of the plaintiff to build or keep the bridge in repair. Neither he nor his foreman had anything to do with it. It was held out to him as reasonably safe for the passage of construction trains, by the very act of taking him back and forth. The bridge was planned and built under the supervision of foremen employed for that purpose. The acts of these foremen were the acts of their principal and not the acts of a fellow-servant of the plaintiff. There is nothing in this case to take it out of the rule that the master is bound to use reasonable care and foresight in furnishing and keeping in repair structures and appliances to be used by the servant in the prosecution of the work assigned to him. This duty is personal to the master, and if entrusted to a foreman, the negligence of the foreman is the negligence of the master." So in this case, as already said, it was no part of the duty of the plaintiff to construct or aid in the construction of the brace and the cleats. It was held out to him by the foreman as a reasonably safe place upon which he could do the work, which he had been directed to remain on the wall to do.

In Arkerson v. Dennison, cited by this court in Bowen v. Railroad, supra, the plaintiff was injured by the falling of the staging upon which he was directed to go by the defendant for the prosecution of the work

for which he was employed. The staging had been erected before the plaintiff entered the employment of the defendant. The evidence tended to show that it was improperly constructed and insecure, either by reason of unsuitable material used or by reason of negligence in fastening it together sufficiently by nailing, or for both or either reasons. That it was insecure and improperly constructed in some way was sufficiently apparent from the account given of the manner of its falling. The court said: "On the one hand, the workman takes upon himself the risks ordinarily incident to the employment he engages in; and those include the results of negligence on the part of others employed in the same service. On the other hand, 'the master is bound to use ordinary care in providing suitable structures and engines and proper servants to carry on his business, and is liable for any negligence in this respect.' . . . . Whether a particular structure or appliance is one for which the master is responsible to his servant may depend upon circumstances, including the nature and scope of the employment of those engaged in its preparation and use. It may depend upon the question whether the direction and charge of the work is confined to the workmen or some of them, or retained by the employer or left unprovided for. If the employer directs his workmen to do certain work, leaving it to them to provide the structures and appliances required for its prosecution, he may be responsible only for care in selection of the men and the materials assigned for it. But if he simply employs them to work under his direction, giving them no charge or responsibility in regard to the result to be accomplished, or the appliances to be used, that responsibility remains with him. . . . When the preparation of the appliances is neither entrusted to nor assumed by them, the master

205 Sup—25

may be held guilty of negligence, if defective appliances are furnished, even though the workmen themselves are employed in the preparation of them.''

The case of Forbes v. Dunnavant, 198 Mo. 193, is much relied upon by the defendant. In that case, Forbes was employed by Dunnavant, a contractor, and was injured while building a scaffold. It appeared from the evidence that one Redford worked as a carpenter with the plaintiff in building the scaffold. The scaffold broke and Forbes fell and was injured dangerously. It appeared that the cause of the injury was that one of the cross timbers under the plank on which he was standing broke. There was evidence that this cross timber was worm eaten and dozed, that is to say, had become soft, starting to rot. This cross timber was selected by Redford, the fellow-servant, who was engaged with the plaintiff in the erection of the scaffold. It was stated by the court that the evidence was uncontradicted that a mass of raw material was furnished by the master for the use of Forbes and Redford in erecting the scaffold. It was not contended that none of this timber was suitable. Redford selected a bad board from the lot which broke under the weight of the plaintiff and his helper, and badly injured plaintiff, and the question was, who selected the board, was it the master or a fellow-servant? If the master could not delegate the duty of selecting that particular board then he was liable; otherwise, not. The court reached the conclusion that where the master buys a mass of raw material, some bad and some good, a result incident to all buying by the quantity in the market, and entrusted the selection out of this mass to carpenters employed to build the scaffold therewith, if one of said carpenters selected a bad board, it was the act of a fellow-servant for which the master would not be responsible. That is to say, that the master might trust the servant to perform the ordinary and

simple duties incident to the servant's employment and resting upon the servant's knowledge and skill. In that case there was no evidence or claim that the foreman of the defendant had anything to do with the selection of the unsound plank or was present and saw it when it was put into the scaffold. The facts of that case of themselves distinguish it from this case, in which the foreman did all the selecting and all the superintending, and the plaintiff relied upon the appliance which was furnished him under the direction of the foreman.

These cases sufficiently indicate the principles announced in all the other cases cited on this point by the learned counsel for the defendant. The contention of the learned counsel for the defendant that the negligence in this case resolves itself into the negligence on the part of the two carpenters who did the nailing of the cleats to the brace-timber, is not supported by the cases he cites. On the contrary, in Arkerson v. Dennison, 117 Mass. l. c. 412, cited and approved by this court in Bowen v. Railroad, 95 Mo. 277, it is said: "When the preparation of the appliances is neither entrusted to nor assumed by them, the master may be held guilty of negligence, if defective appliances are furnished, even though the *workmen themselves are employed in the preparation of them.*" So that the mere fact that these two carpenters nailed the cleats to the brace under the direct supervision of defendant's foreman will not relieve the defendant of liability for the defective appliance, the preparation of which was in no manner entrusted to, nor assumed by them, but the latter appliance was planned and directed by the foreman in person.

III. The first instruction given for the plaintiff is challenged because the court submitted to the jury that if the cleat or slat upon which plaintiff was directed to stand in the performance of his labor, broke

or gave way, that it was too weak to sustain the weight of the plaintiff and was defectively and insecurely fastened or nailed and that defendant's foreman did not exercise ordinary care in so providing said slat in such insecure condition for the plaintiff to be upon it in the discharge of his duties, and that the said foreman did not exercise ordinary care in commanding plaintiff to do said work of untieing the rope from said brace whilst it was so insecurely fastened, plaintiff was entitled to recover. It is insisted again that it was not the foreman who provided the cleat in question insufficiently nailed, for plaintiff to work upon, but it was the plaintiff's fellow-servant who provided such cleat so insecurely nailed. And the argument is repeated that while the master might be said in a remote sense to have furnished the cleat and the brace for the plaintiff to work upon, yet, as he had furnished a sufficient quantity of good materials wherewith to construct the brace, he had discharged his entire duty and the insecurity was due solely to the plaintiff's fellow-servants or fellow-carpenters who placed two nails in it instead of four. As already stated, the facts in evidence do not sustain the defendant's contention. But on the contrary, show that the defendant's foreman did not leave to the carpenters the designing and preparation of this brace, but directed its preparation himself and furnished the plaintiff with this appliance upon which to work. And the facts of this case do not take it out of the rule that the master is bound to use reasonable care and foresight in furnishing and keeping in repair structures and appliances to be used by the servant in the prosecution of the work assigned to him. And equally without merit is the second objection to this instruction, that it improperly submitted to the jury the question whether the defendant's foreman failed to exercise ordinary care in commanding the plaintiff to do the work of taking the rope off of said brace while

said slat was in a defective or insecure condition. The whole device having been planned and prepared under the immediate supervision of the defendant's foreman and furnished to plaintiff upon which to do his work, it was his duty to have seen that the appliance was reasonably safe and secure for the plaintiff to work upon before ordering him to use it.

IV. Instructions B and C are also assailed, but as they announce principles as to the respective obligations of master and servant, which have been approved by this court on numerous occasions and fall within the rules of law already announced in this opinion, it is unnecessary to discuss them further.

V. Error is assigned upon the refusal of the defendant's eighth, ninth, tenth and eleventh instructions. These instructions submitted the defendant's theory already noted that the defendant had discharged his entire duty to the plaintiff if it furnished sufficient and suitable timbers for the brace and cleats and sufficient nails and tools wherewith to fasten said timbers and having done this that even though the fastening of the cleats was done in a careless and negligent manner, the plaintiff could not recover because the carpenters who nailed the cleats to the timber were fellow-servants of the plaintiff. The court modified and amended all of these instructions so as to conform them to those given for the plaintiff, on the theory that if the jury found from the evidence that the defendant was present in the person of its foreman and commanded and directed the said work to be done and the manner in which it should be done, then plaintiff could recover.

VI. Finally, it is insisted that the court erred in allowing the plaintiff, over the objection of the defendant, to answer a question asked him as an expert. While the plaintiff was on the stand his counsel asked him the following questions: "Q. You are a carpenter, are you? A. I ain't now, but I was. Q. Well, I

say you was? A. I was, yes, sir. Q. And for security of a cleat such as that to support the weight of a man, how may nails ought to be put into it?" Objection by counsel for defendant: "We object to that, Your Honor please, as not a proper subject for expert testimony." Mr. Taylor: "I think it is." Mr. Holland: "The jury knows the weight of a man and knows the size of timber and nails." Mr. Taylor: "I don't think its a matter of fact any more that the court would know without information from a man practically what would be necessary in the nailing of a cleat; of course, we have a general idea, but I don't think as a matter of fact every juror —— and I would not know, I would not have much idea what number of nails ought to be put into a cleat to support a man's weight, and what kind of nails, and I think it is perfectly competent to prove that fact from a man who is experienced." The objection was overruled and the defendant excepted. To this the plaintiff answered, "Well, it depends upon the size of the nail, whether four-penny, six-penny or whatever it was, I couldn't state, but if it was six-penny it would take about six or eight; if it was eight-penny, put in about four; ten-penny, four would be the least amount I would depend upon, or any carpenter; that's what we are supposed to put in anything of that kind." Defendant's counsel moved to strike out that question and the answer. The objection was overruled and defendant excepted.

It will be observed no objection was made that the witness was not qualified to give an opinion, but simply that it was not a proper subject for expert testimony. It is assumed by counsel that it was a matter of such common knowledge that the jury needed no light on the subject or that an experienced carpenter such as the witness was shown to be, could not aid the jury by experience as to the number of eight-penny nails necessary to sustain the weight of a man. That it was

not a matter upon which all reasonable minds would reach one conclusion was demonstrated by the witnesses. Mr. Brown, who was the superintendent of construction of the building for defendant and who had twenty-five years' experience as a builder, testified that when a cleat was to be nailed under such circumstances, five or six nails would be required. Fritz, another carpenter, testified that, when a cleat was to be nailed to a brace to support a man's weight, not less than four nails should be put in it to make it reasonably safe, the brace standing at an angle of forty-five degrees. On the other hand, Mr. Settle, an expert of fifteen years' experience as a contractor and engineer, testified two eight-penny nails would be ample, and Mr. Christofell gave a like opinion. "Experience, skill and training may be applied in the common affairs of life. The test of admissibility is not the technical nature of the subject-matter with which the evidence deals, but rather whether the skill or experience of the witness, to whatever subject applied, technical or common, will aid and is necessary to aid the jury." [17 Cyc. 229.] "Those persons who are skilled in mechanical matters are competent to testify to relevant facts which are familiar in the mechanic arts. Such facts may be simple and involve little of the element of reasoning; as, for example, the action of natural laws, the limits of ordinary observation, the lightness or the tensile or other strength of materials or appliances, under what strain they are at a given time or how their strength is affected by given imperfections." [17 Cyc. 71.] Thus, in Boettger v. Iron Co., 124 Mo. l. c. 104, this court said: "The admission of expert testimony to show the effect of a knot or cross-grain upon the strength of a piece of timber, such as was in question in this case, is assigned for error. The following answer of the trial judge to the defendant's objection to that testimony is quite satisfactory: 'The strength of

the timber and other building material is a subject within the scope of the science of civil engineering. It is also, though to a less accurate degree, within the scope of a mechanic's skill; and, for the purpose of this case, a mechanic's opinion would doubtless have been as reliable as that of a civil engineer. And there may be many persons who are neither carpenters nor civil engineers, who have had sufficient experience with building material to be able to form very correct opinions about the strength of timber and the effect of a knot in a piece like the one in question, but still I think it is not a matter of such common knowledge that every one is presumed to understand it. Like many other points in arts and sciences with which people generally acquire some sort of familiarity, they still remain the subject of technical knowledge.' " The foregoing observations apply here. Upon the resisting capacity of the cleats as nailed to the brace, depended the reasonable sufficiency of the appliance which defendant through and by its foreman tendered to plaintiff and requested him to perform his work. It was a vital question in the case and as we have seen was not a matter of such common knowledge that every one is presumed to know how many nails were necessary to render them reasonably safe for a man to impose his weight, but was a matter upon which the conceded experts radically differed. We think the court properly heard the evidence. It may also be remarked that defendant interposed no objection whatever to this class of testimony from Brown and Fritz and availed itself of the same character of evidence from its witnesses, Settle and Christofell. Learned counsel indulge in a criticism of the use of the word "ought" in Mr. Taylor's question, but it is obvious that this word was used in the sense of "necessity;" that is, how many nails were necessary to hold the cleats so that they would sustain a man's body. This objection was not

urged in the circuit court, but if it had been, we think it affords no ground for a reversal of the judgment. It is not insisted that the verdict is excessive, and obviously it is not. The judgment should be and is affirmed.

*Fox, P. J.*, and *Burgess, J.*, concur.