Railroad v. Wheless.

NASHVILLE, CHATTANOOGA & ST LOUIS RAILROAD COM-
PANY v. WM. T. WHELESS.

I. MASTER AND SERVANT. The master is liable for injuries sustained by one servant through the negligence of another, who is his immediate superior.

2. SAME. *Fellow-servant. Engineer and brakeman.* The engineer is not the superior, but the fellow-servant, of the brakeman in their relations as members of the crew of a railroad train.

3. *Same. Same. Same.* The relation of superior and inferior would exist between them where the brakeman is in fact acting under the orders of the engineer.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.    N. BAXTER, J.

EAST & FOGG for Railroad.

BATE & WILLIAMS for Wheless.

McFARLAND, J., delivered the opinion of the court.

Wheless while employed as brakeman for the railroad company, was attempting to "couple" the cars of a freight train on which he was engaged, and in doing so his hand was caught, causing the loss of one of his fingers, and the permanent injury of another. For this injury he has recovered in this action $1,250 damages. From this judgment the railroad company has appealed in error.

The circuit judge said correctly to the jury that the plaintiff placed his right of recovery upon two grounds: First, that the company was liable for the injury because of its failure to provide the safer and more improved mode of coupling the cars. Second, That in backing the cars to effect the coupling, the engineer carelessly and negligently backed the train too fast. The declaration, it is true, contains other allegations of negligence, but the questions made by the proof were as stated by the circuit judge.

Upon the first question the proof showed that there were two kinds of "draw-heads" in use, by means of which freight cars were "coupled;" one known as the " open draw-head," the other the "solid draw-head." The former was the older, the latter the newer invention. The latter was the improved and safer device for connecting the cars. The two cars being coupled had the "open draw-head," but the proof tended to show that the plaintiff knew that both kinds were in use, and continued in his occupation without objection. The judge charged the jury in substance, that if the plaintiff knew that both styles of " draw-heads" were in use—the difference being easily apparent to an ordinary observer—and continued to act as brakeman without objection, he could not recover. This was in accordance with the holding of this court in the case of *Hodges* v. *The East Tenn., Va. & Ga. Railroad Company,* and other cases, and was as full and distinct in favor of the defendant as could have been desired; and from the proof in the record it is not probable that the recovery was upon this ground.

Upon the other ground¹ the proof showed that the accident occurred in the night in the attempt to couple two portions of a freight train that had broken apart. The conductor directed that the train be "coupled up," but did not remain to superintend it himself, going at the time into the depot to attend to other business. The proof tends to show that the engineer backed the part of the train attached to the engine to within eighteen or twenty-four inches of the car to which the coupling was to be made, and then came to a stop. The plaintiff was, at the time, standing between the cars ready to make the coupling. The engineer could not see the position of the cars or their distance apart. He was, however, signalled by another brakeman to back further, and the brakeman says he gave him the proper signal, indicating that he was to back slowly and but a short distance; but by applying too much steam the train ran suddenly and rapidly back, and the plaintiff's fingers were caught between the "bumpers." If the train had been backed slowly the accident would not have occurred. In brief, there is ample evidence to justify the jury in finding that the injury resulted from the want of care, or negligence of the engineer; so the real question in the case was whether the company was liable for the negligence of the engineer. This, under the course of decisions in this State, depends upon the question whether the engineer was the "superior" of the plaintiff in such a sense as that the latter was acting under the authority of the former and under his orders in the particular service, or were

they "fellow-servants" engaged in a common employ-ment. The general rule of the common law is that a master is not responsible to the servant for injuries. resulting from the negligence of a fellow-servant engaged in a common employment, where there has been due care in the selection and employment of the fellow-servant. The more recent decisions of this court have made exceptions to this rule in two respects: First, where the two servants are engaged in different departments of service—as for instance the engineer or hands upon a passenger train, and a section hand at. work on the track: *Carroll* v. *Railroad*, 6 Heis., 347. This exception does not apply in the present case, for it can hardly be said that the different employees constituting "the crew" of a train, are not engaged in the same department of service. They are no doubt "fellow-servants." But the other exception is, where one servant is the immediate superior of the other, with authority to order and direct the latter in his duties—as for instance "a squad" of hands engaged in repairing the track under the authority of a "section boss."

In such case it has been held that if one of the hands is injured by the negligence of the "section boss," the company is liable: *Railroad Company* v. *Bowler*, 9 Heis., 866. Hence, as we have said, the question in this case was, whether the plaintiff, as brakeman, and the engineer occupied towards each other the relation of "inferiors" and "superiors" in the sense indicated. The practical application of this rule involves some difficulty. It is, no doubt, in the first instance,

a question of fact for the jury, and we take it to have been the purpose of the judge to instruct the jury that the result of the case, in this aspect, should depend upon their determination of this question of fact. While he does, in terms, submit to the jury the question whether the engineer was or was not the superior of the plaintiff, yet the charge as a whole, on this question, is somewhat ambiguous.

The charge is of that character, that the court might, if it applied to a doubtful question of fact, reverse because of its ambiguity and tendency to mislead. The more important question, however, is whether the facts do or do not sustain the conclusion that the engineer was the superior of the plaintiff, in the sense we are considering.

There is really little or no conflict as to the *facts*. The witnesses differ in their conclusions or opinions upon the question, but these statements of *facts* are substantially the same. The engineer is required to have superior capacity and skill in his art, to acquire which requires long service. He receives higher wages than the brakeman, and in fact higher wages than the conductor or any employee on the train. He has charge of the engine and manages and operates it, and while in motion his position is on the engine. The brakemen are not required to be men of skill, but a common laborer may, with a little practice, become a brakeman. They are distributed along the train and it is their duty to operate the brakes, usually acting upon signals given by the engineer. They also give or communicate signals to the engineer as to

moving or stopping the trains.   They put off and take
on freight and wood, and perform other menial ser-
vices.   They receive the lowest rate of wages, and in
a general sense, are regarded as inferior to the en-
gineer.   The conductor has charge of the train and it
moves in accordance with his orders, but in many
movements the engineer and brakemen act in accord-
ance with general regulations and a general knowledge
of their duties, and without any special orders.   The
conductor and engineer are both said to be in charge
of the train and responsible for its movements.   The
conductor, engineer, fireman and brakemen constitute
the entire crew of a freight train.   In coupling cars
or making up trains the engineer acts upon signals com-
municated him either by the conductor or brakemen;
but generally he gives no orders in regard thereto.
These are substantially the facts as deposed to by the
witnesses.   Now, the question is, whether or not upon the
facts stated, the engineer was the superior in such a sense,
as under our rule, to make the company responsible
for the results of his negligence, to the brakeman, when
engaged in the character of service disclosed in this
case.

The principle upon which our rule is based, to-wit:
That the master will be liable for injuries resulting to
one servant from the negligence of another servant
*who is the immediate superior of the first*, is based not
upon the idea of the relative rank of the two ser-
vants, or the general superiority of the one in position,
intelligence or skill, or in the wages received; but

upon the ground that the one is placed under the orders and directions of the other, and required to submit to and obey such orders in the performance of his duties; that the "inferior" is placed in the position of a servant to the "superior." In such cases the superior is held to represent the master.

In this view we are of opinion, that the facts do not show that the engineer was, in the sense we are considering, the superior of the plaintiff in this instance. They were engaged in a common service, each performing his particular part. They may both be said to have been acting under the orders, either express or implied, of the conductor. But the engineer did not assume any supervision of the work or give any orders in regard to it, and the plaintiff cannot, in any fair sense, be said to have been acting in this particular matter under the orders, either express or implied, of the engineer; and the mere fact that the engineer was the superior of the plaintiff in position, skill, intelligence and pay, does not change the result.

The overwhelming weight of authority will be found to support this conclusion. We have had occasion, recently, to examine these authorities in the case of the *Knoxville Iron Company* v. *Dobson*, not yet reported. Even the exceptions to the general rule, in regard to fellow-servants, which we have established as above indicated, is opposed to the larger number of cases. We are satisfied, however, with our own rulings, and adhere to them; but we no not feel authorized to extend the exceptions to include the present

case.   To do so would be in effect to abrogate the general common law rule altogether, a rule which has been long established and with the exceptions indicated, universally adhered to.

Where there has been no want of care upon the part of the master in selecting and employing a servant, or in failing to discharge him after he is known to be incompetent, a fellow-servant in a common employment and in the same department of service, not acting under the orders or in subjection to the first, has no remedy for injuries resulting from his negligence. If this be a hard rule to apply to these unfortunate men who, perhaps, for inadequate wages, perform so much arduous and perilous labor, and so many of whom are injured, it is still a rule too well established to be overthrown by the courts. If they should have other protection by law, the law-making power must provide the remedy. It is well settled, that in engaging in this employment, they take upon themselves all the ordinary risks attending it. One of these risks is that "fellow-servants," although in general careful and skillful, will sometimes be negligent. And in order to recover, the plaintiff must show that his injury resulted from the carelessness or want of skill of some one who, in the particular matter, stands in the place of the master.

Of course in some cases, a railroad company may be held liable to a brakeman for the negligence of an engineer, as where the former is in fact acting under the orders of the latter. We do not mean to hold

that the relation of superior or inferior may not, in some cases, exist between them—only that it did not in this case, so far as the record shows.

Reverse the judgment.

TURNEY, J., dissenting.