G. E. CAMPBELL, Respondent, v. HOOSIER STAVE & LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, February 1, 1910.

1. MASTER AND SERVANT: Injury to Servant: Instructions: Omitting to Require Finding Defendant was Negligent. In an action for injuries to a servant by the derailment of a tram car on which he was riding, the omission in an instruction for plaintiff to require a finding that defendant failed to use ordinary care to keep its track in a reasonably safe condition will not work a reversal, where an instruction given for defendant advised the jury the law imposed on defendant as an employer "the obligation to use reasonable and ordinary care, skill and diligence only in procuring suitable and safe ties, rails, cars and machinery."

2. ———: ———: ———: ———: Failure to Define Terms. Defendant cannot be heard to complain of the omission to define the phrase "reasonable and ordinary care, skill and diligence" used in said instruction, inasmuch as it did not request a definitive instruction.

3. ———: ———: ———: Assuming Facts: Harmless Error. In such a case, an instruction which assumes the track had become unsafe because of the carelessness of defendant was erroneous; but the error was harmless in view of the fact the proof was uniform as to the bad condition of portions of the track and particularly of the part where the accident occurred.

4. ———: ———: Care Required of Lumber Company Operating Tram Road. A tram road used by a lumber company for hauling logs only need not be constructed so well as a freight or passenger railway.

5. ———: ———: ———: Case for Jury: Facts Stated. In an action for injuries to a servant by derailment of a tram car on which he was riding, evidence that at the point where the

accident occurred the track was submerged under water, had broken rails, the ties were irregularly arranged and there was lack of support under them; that its condition was due to defendant's want of due attention, inasmuch as the force of hands kept at work on it was inadequate; that the train was moving slowly at the time, and no other explanation of the derailment was sought to be shown, was sufficient to support a finding that the injury was caused by derailment due to defendant's negligence in failing to keep the track in reasonable repair.

6. ——: ——: ——: Pleading: Assumption of Risk must be Pleaded. Assumed risk is no defense to an action for injuries to a servant, where it is not pleaded.

7. ——: ——: ——: Assumption of Risk: Facts Stated. Where plaintiff, who was employed to operate a loader in connection with a logging railroad, which was defective and not reasonably safe, was injured by the derailment of a tram car caused by a defect in the track, and it was not part of his duty to travel over the track, he having testified that he had not been over it for more than four months prior to the accident, he did not assume the risk as a matter of law.

8. ——: ——: ——: ——: Contributory Negligence. Under these facts, plaintiff was not guilty of contributory negligence as a matter of law, this being a question for the jury to pass upon.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*T. J. Brown* for appellant.

(1) The court erred in admitting incompetent evidence in behalf of the plaintiff. Lee v. Publishers George Knapp & Co., 155 Mo. 610; Krueger v. Railroad, 84 Mo. App. 358. (2) The court erred in giving respondent's instructions one and two. Fullerton v. Fordyce, 121 Mo. 1. These instructions are erroneous in this: The plaintiff's acts of discovery as to the conditions by him complained of are not presented as acts which were measured by what a prudent person would

have done under like conditions and circumstances. Chitty v. Railroad, 148 Mo. 64. These instructions should have required the jury to have found that respondent used due care and caution in the course of his employment to have discovered the defects complained of. Karsman v. St. Louis, 153 Mo. 93; Hill v. Drug Co., 140 Mo. 433. (3) The court erred in refusing defendant's demurrer to the evidence at the close of the plaintiff's case, and again at the close of all the evidence in the case. Where the evidence fails to disclose that the cause of the accident is or was the negligence of the defendant the court should have sustained the demurrer. The burden of proving negligence is on the respondent and until he proves the same he has failed to make his case against appellant. Beebee v. Transit Co., 103 S. W. 1019; Graney v. Railroad, 167 Mo. 666; Fuch v. St. Charles, 167 Mo. 620; Skipton v. Railroad, 82 Mo. App. 154. The master is not required to furnish his servant with absolutely safe appliances or machinery with which to work but discharges the full measure of his duty towards his servant when he exercises ordinary and reasonable care to supply and maintain safe machinery, tools and machinery, with which tools the masters work. Minnier v. Sedalia, 167 Mo. 199; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Holmes v. Brandenberg, 172 Mo. 64. This duty does not make the master an insurer of the safety of the servant. Grattis v. Railroad, 153 Mo. 402. "The verdict of the jury is manifestly the result of passion and prejudice." (4) The verdict should have been for the defendant, there being no evidence of any of the defects or negligence charged in the petition. If a specific act of negligence is alleged, this very act of negligence must be proven. Spiro v. Transit Co., 102 Mo. App. 250; Garren v. Railroad, 100 Mo. App. 617; McCarty v. Rood Hotel Co., 144 Mo. 397.

*J. V. Curran* for respondent.

In an accident on a railway or tramway, this plaintiff had his right leg and foot crushed so badly amputation was necessary about seven inches below the knee. He was, at the time, in the employ of defendant, which was an incorporated company, operating a large saw and stave mill, and in connection with it four miles of railway track extending into the woods where logs were obtained for the mill. At the immediate time, plaintiff's employment was in connection with a train of tram cars used to convey logs to the mill. The railway track was not graded much, if at all, but followed the surface of the ground over which it ran. Testimony goes to prove the rails and ties were about the size and kind commonly used in a railway of that kind; but that the track was in poor condition over portions of it. Here and there the ground was swampy, the rails and ties being submerged under pools of water and in some places the track floated or swung above the surface of the ground. It was submerged in what some of the witnesses called "the water hole" where the derailment happened, some of the rails were broken and the trucks of the "loader" were under water. It was in testimony that "a little bit of weight" would bend the track under the water. Where the wreck took place, two or three rails were broken over a space of the length of twenty rails or less, and when the train would pass over these broken rails, it would oscillate up and down. The cars about which plaintiff worked, composed a long train drawn by an engine. Used in connection with this train was what is called a "loader" and it was on the loader plaintiff was working at the time he was hurt. We understand the loader was a species of car which ran on the track and was used in some manner to facilitate loading logs on the other cars, though no description of it is given, and for this reason it is difficult to pic-

ture in one's mind exactly how the accident occurred. Three loaded cars stood in front of the loader and were moving on the track, when the foreman told plaintiff to uncouple the cars from the loader. Plaintiff sat down on the front end of the loader in order to pull the coupling pin and the testimony shows it was necessary or proper for him to do this. When he sat down his legs hung down over the end of the loader. The pin had already worked out or had been drawn out of the coupling, but while plaintiff was in the posture described, the loaded car in front of the loader left the rails and it, or logs projecting over the end of it, crushed against plaintiff's leg before he could get it out of the way. According to the testimony the car may have left the track from running over a broken rail, or from the rails not being securely spiked to the ties or in consequence of the way the ties were put down; "launched one way and another, giving the rails a chance to spread out" as was said by the man who was foreman of the section at the date of the accident. At the spot the ties had been laid on the surface of the ground without preparing a roadbed for them to rest on. The foreman said his recollection was that broken rails had been worked on and repaired in that place before the accident; but they were repaired immediately after the accident also, and then showed "old breaks" in the rails. This witness said the road was a pretty good tram road, but like others, was good in some places and bad in others. Another foreman testified part of the road "was an average tram road" and sometimes he had enough men to keep it in repair and sometimes had too few. The petition declared on the defective and unsafe condition of the railway track, alleged this condition was due to the insufficient number of ties used to hold the rails, the rails being insecurely spiked to the ties, the latter badly braced, being old and rotten and the rails worn out. A further averment is that defendant negligently operated

its cars on the track while in such bad and unsafe state, and negligently failed to keep its road reasonably safe. By reason of those defects it is alleged the engine and cars ran off the rails and against plaintiff's leg. Plaintiff testified he had not been over the road for about four months prior to the accident, as he was engaged in work which offered no occasion for him to go over it. The defense was a general denial and a plea of negligence on the part of plaintiff in taking the position where he was hurt, which act is alleged to have directly contributed to his injury. The course of the examination and cross-examination of the witnesses would indicate an effort to prove the track was like the common run of the same class of railways, to prove plaintiff needlessly took a position of danger and that he knew, or by proper attention would have known, the condition of the railroad and hence must be held to have assumed the risk of working on it as it was. Questions asked by defendant's counsel suggest his purpose was to show plaintiff should have lain down flat on the car in order to draw the pin, or have stood up, and in no event should have sat down on the end with his legs dangling between the two cars. No witness said it was proper to lay down and those who testified the uncoupling could have been done in a standing posture, testified also it would have been necessary to stand between the cars. A further effort to show contributory negligence on plaintiff's part turned on the pin being out of the coupling when plaintiff attempted to draw it; whence it is argued there was no occasion to take the position he did. Plaintiff testified he did not observe the pin was out until he had sat down. This instruction was given for plaintiff:

"The court instructs the jury that if they believe from the evidence that on the 1st day of March, 1907, plaintiff was in the employment of the defendant, and that while in the discharge of his duties as such employee, he was without carelessness or negligence on his

part, which contributed directly thereto, crushed and mutilated his right foot and ankle by reason of the loader and car striking each other at the ends, and that the said striking together of the loader and car was caused by reason of the car jumping from the track, and that if you further find from the evidence that the derailment of the car was occasioned by the negligence and careless acts of defendant in not maintaining the rails and ties in a reasonably safe condition; that the defective or unsafe condition of said rails and ties was unknown to plaintiff, and could not have been known by ordinary care or caution on his part but was known to defendant, or might have been known to defendant by the exercise of reasonable caution and diligence on the part of defendant, then the jury will find for plaintiff."

These, among others, were given for defendant:

"1. The court further instructs the jury that as a matter of law the defendant is not bound to provide its employees with ties, rails, cars and machinery absolutely safe. The law imposes upon defendant as an employer only the obligation to use reasonable and ordinary care, skill and diligence in procuring and furnishing suitable and safe ties, rails, cars and machinery. When plaintiff entered into the service of defendant, he thereby undertook to incur all the ordinary risks incident to his employment, including his own negligence. It was plaintiff's duty as a servant of defendant to use all reasonable care and diligence to see that the ties, rails, cars and machinery daily used by him in the performance of his duty was in fit condition for use, and report the defects which were apparent, if any, to the company, and if he did not do so, it was negligence on his part.

"2. The court further instructs the jury that while the defendant must use care and diligence to supply its employees with good and safe machinery and appliances, it does not warrant the soundness of such

machinery or appliances, and if the jury believe from the evidence that due care was used by defendant's employees in the selection, construction and testing of its ties, rails, cars and machinery and appliances in proof a short time before the same was furnished for use, and that the defect, if any you find from the evidence, in the same was not discoverable by such inspection and test, you must find for the defendant.

"3. The court instructs the jury that if you believe and find from the evidence that plaintiff's injuries were caused by a negligent or dangerous position occupied by him on the car, or that he would not have been so injured if he had occupied a position with his person upon the car, and further believe that the position occupied by him was voluntarily assumed, not necessarily in the discharge of his duties, and was more dangerous than a position upon the car, you must find for the defendant, although you may believe that track, rails, ties and cars in proof were defective or made of poor and defective material."

GOODE, J. (after stating the facts).—The first instruction given for plaintiff and which we have copied, is said to be erroneous because it did not measure the conduct of defendant with regard to keeping the track in order, by what would have been the conduct of a person of ordinary prudence under like circumstances. This criterion of duty was given in that portion of the instruction which referred to the jury the question of the ability of defendant to ascertain by ordinary care the track was in bad order, if, in fact, it was; but was not called attention to in so many words, in that portion dealing with the alleged negligence of defendant in not maintaining the rails and ties in a reasonably safe condition. The language of the instruction at this point is as follows: "And that if you further find from the evidence that the derailment of the car was occasioned by the negligent and careless acts

of defendant in not maintaining the rails and ties in a
reasonably safe condition," etc. The first instruction,
as we have numbered them, given for defendant, advised
the jury the law imposed on defendant as an employer,
only the obligation to use reasonable and ordinary care,
skill and diligence in procuring suitable and safe ties,
rails, cars and machinery; thus putting to the jury the
decision of the very issue which is said to have been
omitted from the instruction for plaintiff. No defini-
tion of the phrase "reasonable and ordinary care, skill
and diligence" was given, but none was requested by
defendant, which was the party making use of the
phrase, and it cannot complain of the omission. And
it has been held the use of such expressions as "reason-
able care" and "negligence" in instructions granted at
the request of one party, without defining them, when
a definition is not requested, is not always reversible
error on the complaint of the opposite party. This was
ruled in an action brought, as this one was, to recover
damages for an injury to an employee alleged to have
been caused by the negligence of the master. [Johnson
v. Railroad, 96 Mo. 340, 349, 9 S. W. 790.] In view of
the explicit statement of the law as to the point com-
plained of in the instruction for defendant, we hold the
omission to require in the instruction for plaintiff, a
finding that defendant had failed to use ordinary care
to keep its track in a reasonably safe condition, should
not work a reversal; and so it was ruled upon the like
point in Deschner v. Railroad, 200 Mo. 310, 333, 98
S. W. 737.

A more serious fault in the form of the instruction
for plaintiff, was omitting to require findings that the
track was not reasonably safe and its unsafe condition
was due to a lack of care on the part of defendant.
More explicitly stated, the fault of the instruction is
a tendency to convey the impression that the court as-
sumed the track had become unsafe because of the care-

146 App.—44

lessness of defendant. The charge has not been assailed on this ground, which we mention mainly to say we do not think the language used would admit of general application to tort cases. If the fault had been assigned for error in the present case, it could not have been cause for a reversal in view of the evidence. The proof was uniform as to the bad condition of portions of the track and particularly of the part where the accident occurred, though an unsuccessful effort was made to show it was about like other tracks used for like purposes. No doubt a tram road used only for hauling logs, need not be constructed as well as a freight or passenger railway; but there must be more care used to safeguard workmen from accidents due to the state of the track, than was exercised by defendant. We perceive no room for any other conclusion than the one to which the jury came:. *i. e.,* that where the accident occurred the track was not reasonably safe, submerged as it was under water, with broken rails, ties · irregularly arranged and lack of support under them; and that its condition was due to defendant's want of attention, inasmuch as the force of hands kept at work on it was inadequate. Neither do we see how an inference could be drawn that the car which crushed plaintiff's leg was derailed by anything but the defective track. The train was moving slowly at the time and no other explanation of the derailment was sought to be shown by the testimony or is insisted on here. That plaintiff was injured in consequence of the derailment was not, of course, disputed.

The defenses mainly relied on were negligence on plaintiff's part contributing to the injury and an assumption of the risk. As to the latter defense, it is enough to say it was not pleaded in the answer, and if it had been, the law of this State is opposed to the theory that an employee assumes the risk of injury from hazards like the one to which plaintiff was exposed by the condition of the track. It is argued in support

of the defense that as plaintiff traveled over the track he should be held to have known the state it was in and to have voluntarily incurred the consequent peril. He had not traveled over it, as he said, for more than four months prior to the accident, and, even if he had, the fact would not bar his recovery as a matter of law. [Dakan v. Chase Merc. Co., 197 Mo. 720, 94 S. W. 944.]

The most that can be said of the defense of contributory negligence is that it was for the jury to pass upon. Really we find no evidence in the record tending to convict plaintiff of any negligence.

The judgment will be affirmed. All concur.