HARRIET HOOVER, Respondent, v. THE WESTERN COAL & MINING COMPANY, Appellant.

Kansas City Court of Appeals, November 20, 1911.

1. MASTER AND SERVANT: Negligence: Assumption of Risk. Plaintiff sued for damages for the death of her husband caused by a heavy piece of slate falling on him from the roof of a coal mine. Deceased, his fellow workman and their foreman, inspected the roof and found that it had a "drummy" sound indicating that it was loose, but the foreman assured them that it was all right and they proceeded with the work and shortly thereafter deceased was struck by the slate. *Held*, that the demurrer to the evidence was properly overruled.

2. ————: ————: ————. Where the danger is not so patent as to deter an ordinarily prudent man from continuing his work, with reasonable safety, the employer is not relieved of liability if injury follows, and in determining whether an employee acts with proper care and prudence, consideration may be given the judgment of the master in directing the work to continue.

3. ————: ————: ————. Where the foreman knew that the slab was loose and likely to fall, and with such knowledge proceeds with the work, the employee is thereby exposed to dangers not incidental to the employment.

4. ————: ————: Instructions. Instructions must be read as a whole and as a single charge, and the appellate court cannot assume that the jury did not read all of them, nor that they would place a strained construction upon any of them.

5. ————: ————: **Fellow-Servant.** The negligence of a fellow-servant is attributable to the master under Section 5440, Revised Statutes 1909, and this act has been held to be not in conflict with the Constitution.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

AFFIRMED.

*R. T. Railey* and *Scott & Bowker* for appellant.

(1) Where the danger is as well known to the servant as the master, the former must be taken to have assumed the risk, and cannot hold the master responsible for his injuries. Watson v. Coal Co., 52 Mo. App. 366; Beckman v. Brewing Assn., 98 Mo. 555; Steinhauser v. Spraul, 127 Mo. 542; Hager v. Railroad, 207 Mo. 302; Booth v. Railroad, 217 Mo. 710. (2) The common-law rule that it was the duty of the master to furnish his servant a reasonably safe place to work is not applicable where the place is constantly shifting and being transformed as the direct result of the servant's labor. Meehan v. Railroad, 114 Mo. App. 396; Heald v. Wallace, supra; Admr. v. Lime and Cement Co., 113 Mo. App. 330. (3) Where the servant does an act, partly in reliance on his own judgment and partly in reliance upon the master's judgment, and if both be at fault, a resulting injury to the servant from such concurrent negligent judgments is not actionable. Knorpp v. Wagner, 195 Mo. 637. (4) If it took the want of ordinary care of both the employer and employee to produce the injury, both are at fault and there can be no recovery by either. Where both parties are negligent and the injury is caused by such combined negligence, there can be no recovery by either party. Coal Co. v. Estievenard, 53 Ohio St. 43, 40 N. E. Rep. 725. (5) To hold that an employee, with full knowledge of the dangers and attendant risk,

could rely upon his own judgment as to the liability of given slab or bolder to fall, and then, after an injury, hold his employer for the resulting injury, would be to make the latter responsible for the lack of judgment of his employees, and this the law does not attempt to do. Roccia v. Coal Mining Co., 121 Fed. Rep. 451. (6) It is the duty of the master to furnish to the servant a reasonably safe place in which to do his work, and conversely, it is equally well settled that it is the duty of the servant to take ordinary care to learn the dangers which are likely to beset him in the service. Roberts v. Telephone Co., 166 Mo. 370. (7) If the risk is such as to be perfectly obvious to any man, either servant or master, then the servant assumes the risk. Fugler v. Bothe, 117 Mo. 501.

*Alexander Graves* and *Charles Lyons* for respondent.

JOHNSON, J.—Plaintiff is the widow of Henry Hoover, who was killed in defendant's coal mine while engaged in its service as a miner. Plaintiff, charging that his death was caused by defendant's negligence, brought this action for damages and recovered judgment in the trial court.

It appears that the deceased was engaged with three others in mining coal with an electric machine, which was operated by defendant's foreman. The machine was about two feet wide and weighed near 2700 pounds. It is so contrived that it cuts the dirt from under the coal. The dirt is then racked and the coal propped up and left for those who load it. The foreman operating the machine was Charles Hoover, a son of the deceased. The deceased's duty was to prop the coal after the dirt was taken from under it. He was an experienced miner. On the day of his injury they had begun work at eight o'clock and continued for nearly three hours when a heavy piece of slate

fell upon him from the roof, from the effect of which he soon died.

During the three hours the men were at work before his injury the roof was examined or tested by each of the four men, though the examination made by deceased was some distance from where the roof fell. The examination was made by tapping and it made a hollow or "drummy." sound, as expressed by the witnesses. This was known to indicate that the roof was loose. The examinations were made in the presence and hearing of deceased. The last one was made by the foreman about fifteen minutes before the injury and it had a "drummy" sound. The foreman said that it "sounded drummy," but he "believed we could make it through all right."

In view of this evidence defendant insists that the trial court erred in not sustaining a demurrer to plaintiff's case, since, as it contends, there was a clear showing of assumption of risk by the deceased. We have, however, concluded that under the rulings in this state the court took the proper action in refusing the demurrer and submitting the question to the jury. If danger from the defect is not so patent and manifest as to deter an ordinarily prudent man—if it is such that an ordinarily prudent man could reasonably think he might continue his work in safety—he may do so, without relieving the employer of liability if injury follows. And in determining whether he acted with proper care and prudence the employee has a right to consider the judgment of the master, which, in this case, was in favor of proceeding with the work. The act of the foreman in starting up the machine and continuing the work was, in effect, a direction to the men to continue. [Curtis v. McNair, 173 Mo. 270; Bradley v. Railroad Co., 138 Mo. 293; Huhn v. Railroad Co., 92 Mo. 440; Smith v. Coal Co., 75 Mo. App. 177; Anderson v. Coal & Mining Co., 138 Mo. App. 76; Morgan v. Railroad Co., 136 Mo. App. 337.]

We do not agree with defendant that the foreman performed the master's full duty towards its servants in making the usual inspection of the roof a few moments before the injury and that in ordering the men to proceed with the work he merely erred in judgment and not in the performance of any duty. As we said in the recent case of Anderson v. Coal & Mining Co., supra, the evidence of plaintiff tends to show that the injury was not the result of a mere mistake in judgment but was due to a negligent disregard of the safety of the workmen. The foreman knew that the slab was loose and likely to fall and, with such knowledge, his act in proceeding with the work amounted to a deliberate exposure of the workmen to dangers not incidental to the employment.

Defendant objects to instruction numbered three, given at the request of plaintiff, on the ground that it required of the injured workman a lower degree of care than that imposed on him by the legal rule. The instruction informed the jury that knowledge of the defective roof would not prevent recovery if deceased believed "that he could do said work at that time and place by the exercise of care, if you believe from the evidence that he used all the care required by his position." Standing alone this declaration of the rule would be subject to the criticism made by defendant. In effect it would invest the jury with the purely judicial function of determining the degree of care the deceased was bound to exercise for his own protection. The legal rule imposed in such cases is the observance of ordinary care and the jury should not be allowed by the instructions of the court to employ any other rule. But we find the instruction numbered three does not direct a verdict nor assume to cover the whole case and, turning to other instructions given at the behest of plaintiff (especially those that do cover the whole case), we find in their hypothesis the requirement that the jury must believe from the evidence that the de-

ceased was "in the exercise of ordinary care and prudence" and the term is properly defined in plaintiff's eighth instruction. The rule is well settled "that the instructions must be read as a whole, as a single charge," and thus reading them there is no room for any other construction than that the term "care" as used in the third instruction was intended to mean ordinary care. We cannot assume that the jury did not read all of the instructions nor that they would place a strained and unnatural construction upon any of them.

Plaintiff's fifth instruction assumed to cover the whole case and in its hypothesis, included the declaration that Hoover "had the right to rely upon the judgment of said boss as an assurance of safety" without specifically requiring the jury to find that he did rely on such assurance. The jury well might have believed from all the evidence in the case that Hoover acted entirely on his own judgment and was uninfluenced by the assurance of the foreman in which event the plaintiff would have no cause of action. Isolated, the declaration quoted is erroneous, but in the light of its context and as modified and illuminated by other instructions we think the jury must have understood that the plaintiff could recover on no other ground than that of reliance by her husband on the assurance of the foreman. Throughout the trial that element of her cause of action was the most prominent and the most seriously contested and no reasonable mind can construe the instructions to mean that plaintiff could recover regardless of whether or not the deceased was injured in consequence of his reliance on the superior judgment of the master.

We find no prejudicial error in the instructions and pass to other issues.

Before the trial, the court, at plaintiff's instance, struck out the fourth, fifth and sixth paragraphs of defendant's answer. The fourth was a plea that de-

ceased's injury and death, if occasioned by negligence at all, was the negligence of a fellow-servant. This was no defense, since by act of the Legislature, passed before the present action arose and recently held by the Supreme Court to be not in conflict with the Constitution (Shohoney v. Ry. Co., 231 Mo. 131), the negligence of a fellow-servant is attributable to the master (R. S. 1909, sec. 5440). And, as stated by plaintiff, even if improperly stricken out, the same defense could have been made under the general denial made by defendant, since proof that the negligence of a fellow-servant caused the injury would, before that statute was enacted, have shown that it was not the negligence of defendant. [Kaminiski v. Iron Works, 167 Mo. 462.]

The fifth and sixth paragraphs of defendant's answer, in effect, pleaded that the foreman was a fellow-servant of deceased and the two others, working together, and that they were all members of a labor organization known as the "Miners Union," and that this organization dictated to and compelled defendant to employ the foreman, and that while he was employed by defendant, such employment was against its will and that it was compelled by such union to accept the services of the foreman, and that it had no right or authority to discharge the foreman for neglect of duty, such authority being assumed by the union.

As already stated we have a statute which makes mining companies and corporations liable to an employee for the negligence of a fellow-servant. Labor unions—organizations for the advancement and protection of laborers—have existed in this country and in England for a great number of years. Especially in recent times have they grown to be a part of the industrial fabric, and have become a recognized part of our institutions. Their existence, and their action taken for mutual protection, by its constant exercise, were known to everyone and yet the Legislature, with

such knowledge, enacted the statute making the employer liable to a servant for the negligence of a fellow-servant, without any exception save that of contributory negligence. We must attach significance to this and take it as the legislative meaning that none was intended. In addition to that, it was enacted that the liability of the employer could not be contracted away (R. S. 1909, sec. 5443).

It is not clear what was meant by these parts of the answer. The allegations approach nearer to a charge of duress than anything else, yet they are wholly insufficient in that respect. If intended as a charge of duress of the person of defendant's managing officer or officers, it does not state in what way they were placed in bodily fear and thereby compelled to employ deceased and his fellow-workman, neither does it state in what way they were put in bodily fear if they should attempt to discharge any employee. [Murdock v. Lewis, 26 Mo. App. 234.] If it was intended to charge duress of property, it does not appear, by intendment or otherwise, in what way they were put in fear of loss of property; nor whether there was any ground to suppose there would be an immediate attempt to carry out the threat of its destruction. So, whether considered as an attempt to charge duress of person, or property, the pleas were wholly insufficient. [State ex rel. v. Stonestreet, 92 Mo. App. 214.]

If a charge of duress be disclaimed and this part of the defense be put upon the ground that defendant did not employ or discharge those working for it and was not responsible for their conduct, it would be so inconsistent on the face of the remainder of the pleading as to afford no reason for complaining of the court in striking it out. But it is difficult to understand that defendant could, in good faith, mean the plea as a real defense, in the face of the fact that it continued to run its business with such employees, continued such

persons in its employ, and, as we have a right to assume, continued to pay them.

We have had but one authority cited on the general subjects (Farmer v. Kearney, 115 La. 722), and that we do not consider applicable to the particular matters alleged in this case. The judgment is affirmed. All concur.