SAMPSON GUTHRIE, Appellant, v. WILLIAM W. GILLESPIE.—6 S. W. (2d) 886.

Division One, May 18, 1928.

*Charles E. Gibbany, K. D. Cross* and *J. W. McKnight* for appellant.

*J. W. Roberts, E. P. Stapleton* and *Cook & Cummins* for respondent.

ELLISON, C.—This is an action for damages for personal injuries—a master-and-servant case. The plaintiff (appellant) had a verdict below for $9000, which, on defendant's motion for a new trial, was set aside as being against the weight of the evidence.

The ultimate charge in the appellant's petition is that the respondent failed to provide him with a safe place of work. The gist of his case, on the facts, is that he was assigned to work on a scaffold furnished by the respondent, in repairing the roof of a house. Owing to structural defects the scaffold collapsed and appellant fell to the ground breaking his leg and sustaining serious, painful and permanent injuries.

The respondent's defense was that he did not furnish the scaffold; that appellant and another workman named Swope were employed as fellow-servants to erect the scaffold, as well as to fix the roof; that it was their duty to make their own place of work; that respondent supplied them with good materials, but they failed securely to fasten together the supporting structure, in consequence of which it broke. Hence it is claimed appellant's injuries were the result of his own negligence and that of his fellow-servant, or the negligence of one of them. It was not disputed that the part of the scaffold which gave way was nailed together by Swope. The controverted questions of fact were whether the appellant had been hired by respondent to work on the job before the scaffold was completed, and whether it was any part of his duty to assist in the erection of the scaffold.

The appellant was a general day laborer, about sixty years old, at the time he received his injuries in January, 1924. The respondent was a retired farmer, about seventy-eight years old. He made it a business, in a way, to buy and remodel small residence properties in Albany in Gentry County. On the occasion which figures in this case he was repairing a house, the main part of which was about sixteen feet square and about a story and a half high. The work to be done, outside, was to put in new sills and foundation blocks and to add a new roof of roofing paper. Swope, who had been assisting the respondent for several days before the date of the accident, described himself as "a Jack of all trades, and the master of none." Yet he further said he had been doing carpenter work, or as he put it, had "helped in and around" at that work for fifteen years or so, and that he considered himself competent to build a scaffold.

On the day the appellant was hurt the work had progressed to a point where it was time to put on the paper roof. Swope says on

that morning he set about building the scaffold from lumber, part of which he was directed to get from respondent's barn lot about four blocks away. As he was leaving to get this lumber the respondent went up town with a carpenter named Lundy to exchange some window glass. Lundy was going to work inside the house. Swope got back first and went to work on the scaffold. About then the appellant came along and stood around merely as a spectator. Presently the respondent and Lundy returned from town riding in the automobile of a man named Siddens. The respondent then assisted Swope in putting up one leg of the scaffold, and remained at hand until it was completed.

At that juncture, or a little before, Swope informed the respondent the wind was too high for him to put on the roofing paper alone. So the respondent hired the appellant to assist Swope at that work. The scaffold then was practically completed. Being asked what if any work the appellant did with reference to the construction of the scaffold, Swope replied, "He never done any that I can recollect of." The appellant's adult son also was present, and the appellant sent him home to get a hammer—whether to use in building the scaffold or in nailing down the paper was disputed. They would nail lath over the edge of the paper. Appellant couldn't reach high enough to nail the top end of one lath, and Swope, who was taller, stepped over to nail it for him. Under their combined weight the scaffold broke down, a cross-stringer splitting where a sixteen penny spike was driven through, and an eight penny nail pulling out. Only these two nails were used at this place.

The carpenter, Lundy, corroborated Swope's testimony in part. He said when he and the respondent went up town to get the window glass the appellant had not yet appeared on the scene; and that when they returned Swope had practically completed the scaffold, as nearly as he could remember. He was then asked when he first saw the appellant, and he answered he couldn't recall, but that it was not until after his return from town, where he had been for about an hour. The appellant and his son were both there, and the former came in the house a time or two and talked to him (Lundy) while he was engaged inside. The appellant then was not wearing a nail apron and had no hammer. Swope was working outside, as could be told from the sound of his hammer and saw. Lundy did not see appellant do any work on the scaffold, but would not say he did not do any. He did not hear the conversation between respondent and the appellant when the latter was hired to work, but he did know they were talking outside, and this was after he had returned from town and was at work in the house.

The foregoing was all the evidence offered by the appellant, except the testimony of a physician concerning his injuries. Neither the appellant nor his son took the stand.

The respondent testified that on the morning of the accident Swope reported at the house about seven o'clock. He and the respondent finished the sills and foundation about eight o'clock. The appellant appeared on the scene about that time. Lundy had not yet come. The respondent went to get him. After he came back with Lundy, and before he and Lundy went up town for the window glass, he engaged the appellant to work with Swope on the roofing operations —that is, to build the scaffold and put on the roofing paper. He said he told both of them to go over to his barn to get the scaffolding materials, and that the appellant then sent for his hammer. When he (respondent) returned from town after an absence of about an hour the scaffold was all up except one leg, or upright—the one to which was nailed the crosspiece that later broke. The appellant and Swope were working on this particular part of the scaffold at the time. Swope was up on a ladder nailing on the crosstie. The respondent specifically denied he assisted in any way in building the scaffold after he got back from town, and the effect of his testimony was to deny that he did anything at any time except to direct the appellant and Swope to build it and to tell them where to get the material.

On cross-examination the witness Lundy admitted that in August after the appellant was hurt in January he talked to the respondent and his attorney, and that he was unwilling to go into the details of the accident with them. He said he might have told them he didn't remember the detailed facts, but his recollection of the conversation was that he answered a question or two and then said he preferred not to talk. The reason he assigned for his reticence was that he was not in good condition because of an operation, and also that he didn't want to do injury to either of the parties to the controversy. He was the respondent's neighbor, and on terms of friendly intimacy with him and had sold him his house.

On cross-examination of Swope the respondent showed that four or five days after the accident the witness signed a written statement containing the following:

"I, T. F. Swope, state that my residence is Albany, Missouri; that on the 31st day of January, 1924, I was employed by W. W. Gillispie of Albany, Missouri, to put a paper roof on a dwelling in Northwest Albany. Sampson Guthrie was assisting me in doing that work. The first work that we did was to build the scaffold in order to do the work on the roof. I am not sure that Sampson Guthrie assisted me in all of the building of the scaffold, but I do know that he helped me make the latter and last part of it. I also know that some-

one held the scaffold up while I nailed it to the building, but I am not positive who it was, and it was the same scaffold that later broke. . . . Mr. Sampson Guthrie was present all that time when the scaffold was being built, and he was employed to help me prior and before I nailed up the scaffold that broke.''

Swope contended he only meant by the statement to say that the appellant was *present* while the scaffold was being built, not that he was *employed* for that work; that the appellant was not hired until the scaffold was practically completed; and that if he did any work on the scaffold it was only to assist in laying the walking board thereon after it was all nailed up.

The respondent admitted on cross-examination that he was well acquainted with the man Siddens with whom he and Lundy rode back from town to the house, as heretofore narrated; and that although Siddens lived close to Albany and was accessible to subpoena, he had not asked him to attend the trial as a witness. So far as we can see, however, there is only a possibility, and not a probability, that Siddens could have known anything about the case. When he drove Lundy and respondent back from town he let them out of his car about twenty-five feet from the house and there is no evidence that he remained longer than was necessary to do that. If, in that brief interval, he noticed whether appellant was helping Swope build the scaffold, as respondent says, or was not, as Swope says, his testimony would have been of value; otherwise not. Furthermore there is nothing in the record indicating Siddens was not equally available as a witness for appellant.

At the close of the case appellant asked and the court gave two instructions, numbered 1 and 3, which told the jury, in substance, if the appellant was *not* employed to assist in the building of the scaffold and did not do so, then, as between him and the respondent, it was the latter's duty to see that the scaffold was reasonably safe; and if it was not safe and appellant was injured in consequence, their verdict should be for him. No other theory of liability was propounded. Respondent's Instruction No. 3 said if the appellant *was* employed to work with Swope in building the scaffold from materials furnished by respondent, and if the materials were suitable and sufficient, but the collapse of the scaffold was due to their failure to nail it together properly, then the verdict should be for the respondent. So it seems clear the case below was treated by both sides as turning on the question whether or not the appellant was employed to and did assist in the erection of the scaffold. A new trial was granted because the verdict was against the weight of the evidence—on that issue, necessarily. In so ruling the court announced its conclusion was induced by the fact that the appellant failed to take the stand in his own behalf. Was the ruling reversible error? We think not.

I. There was at least some substantial evidence to support the circuit court's order, and that is as far as this court will inquire. It is fundamental that appellate courts do not pass on the weight of the evidence in reviewing the action of trial courts on motions for a new trial (State ex rel. A. T. & S. F. Ry. Co. v. Ellison, 268 Mo. 225, 231, 186 S. W. 1075; and it has been said the scrutiny is less strict when a new trial has been granted than when it has been refused, and that in the former instance an appellate court will seldom interfere. [Lamb v. Feehan (Mo., Div. 1), 276 S. W. 71, 80; Stafford v. Ryan (Mo., Div. 2), 276 S. W. 636, 637.]

But the appellant argues the conclusion of the trial court cannot stand because it was confessedly induced by his failure to testify in his own behalf, whereas that circumstance at most only gave rise to a presumption, and was not *evidence* which the court could throw into the scales against him in weighing the testimony. This view is erroneous. It is true such a presumption (if it be that) will not supply a missing link in an adversary's case, and cannot be treated as independent evidence of a fact otherwise unproven (Diel v. Mo. Pac. Ry. Co., 37 Mo. App. 454, 459; State ex rel. Detroit F. & M. Ins. Co. v. Ellison, 268 Mo. 239, 257, 187 S. W. 23; 22 C. J. 57, p. 122); but it can be considered in measuring the credibility or probative force of the evidence presented.

It is unnecessary to say the inference in such instances rises to the dignity of a presumption. An inference is simply a permissible deduction from facts adduced and taken as true (4 Words & Phrases, p. 3579; 2 Words & Phrases (2 S.) p. 1059); and that a court or jury *may* draw an unfavorable conclusion from the unexplained refusal of a party to testify on issues vital to his case of which he has especial knowledge, is well established. It is a circumstance that the triers of fact may consider.

The rule has been most frequently invoked in fraud cases, and has been referred to as belonging to that branch of our law (Frohman v. Lowenstein, 303 Mo. 339, 361, 260 S. W. 460); but its application is not limited to controversies of that class. [Sanders v. Kaster (Mo., Div. 1), 222 S. W. 133, 135; 22 C. J. 121, sec. 57; 10 R. C. L. 887, sec. 36; Ann. Cas. 1914 A. 909, 919, note.] There are, furthermore, many personal injury cases in which this court has held the failure of a railroad to call its employees as witnesses raises a prejudicial inference (Sullivan v. G. & N. I. R. R. Co., 308 Mo. 48, 66, 271 S. W. 983; Kame v. St. L. & S. F. R. R. Co., 254 Mo. 175, 194, 162 S. W. 240; Reyburn v. Mo. Pac. Ry. Co., 187 Mo. 565, 575, 86 S. W. 174); so, also, in agency cases (Bryant v. Lazarus, 235 Mo. 606, 612, 139 S. W. 558); and it would seem a party is quite as much under duty to call *himself* to testify as he would be to produce a third person.

The further point is made that the unfavorable inference mentioned cannot be drawn because Section 6802, Revised Statutes 1919, requires all scaffolds used in the repairing of the buildings of any kind to be well and safely supported, and enjoins upon all persons thus engaged caution to prevent injury to those employed on the work. It is said the effect of the statute is to make mere proof of the collapse of a scaffold prima-facie evidence of the master's negligence (citing Prapuolenis v. Goebel Construction Co., 279 Mo. 358, 368, 213 S. W. 792; Stafford v. Adams, 113 Mo. App. 717, 721, 88 S. W. 1130) and to transfer the burden of proof from the plaintiff to the defendant. Appellant argues that since he was able, by virtue of the statute, to make a prima-facie case without his own testimony, he was under no obligation to take the stand and ought not to be penalized for failing so to do.

For the purposes of the case it may be conceded the burden devolved upon the respondent to acquit himself of negligence *after* a prima-facie showing had been made that the relation of master and servant existed between him and appellant, that the scaffold was furnished by respondent, and that the appellant's injuries resulted from the fall of the scaffold. But the burden was on appellant to establish these initial facts—and by whom could he have done it better than by himself? And so this argument can avail appellant nothing even if we admit, which we do not, that a benign presumption raised by the law in favor of a party may with entire impunity be made a cache for the concealment of helpful facts.

Houghton v. Jacobs (Mo., Div. 1), 246 S. W. 285, cited by appellant, is not in conflict with the foregoing. In that case a mother probated a note against the estate of her deceased son. At the trial in the circuit court on appeal she offered the note in evidence and rested without taking the stand, relying on the presumption accorded negotiable instruments. The administrator had theretofore indicated through the elaborate opening statement of his counsel his defense would be that the note was without consideration. The circuit court sustained a demurrer to her evidence, wrongfully holding, in effect, her silence destroyed her prima-facie case. This court reversed and remanded the cause, saying in these circumstances the mother was under no duty to speak and that no unfavorable inference could be drawn. But what was meant by that was that she was under no duty to speak at that stage of the case. The administrator had merely indicated what he *expected* to prove, and the question under consideration was not the weight of the evidence but the substance of it. If the administrator had put on his evidence and the mother had still refused to testify, and the court had set aside a verdict in her favor as against the weight of the evidence on that account, we apprehend the ruling would have been as here.

What has been said applies to and disposes of another contention made by appellant, viz., that he was under no duty to take the stand because the fellow-servant defense tendered by respondent was an affirmative defense on which the respondent carried the burden. We shall, however, revert to this question later.

II. The next assignment is that under the scaffold statute, Section 6802, and the general law, it was the non-delegable duty of the respondent as master to use ordinary care to furnish appellant a reasonably safe scaffold upon which to work; and since it is conceded he was injured by the fall of an unsafe scaffold, it makes no difference that respondent entrusted the building of the scaffold to Swope and even to the appellant himself; the respondent is liable notwithstanding. This is not the theory on which appellant submitted his case below, but the point is presented on the ground that a verdict for respondent would not stand if a new trial were granted. [State ex rel. A., T. & S. F. Ry. Co. v. Ellison, 268 Mo. l. c. 232, 186 S. W. l. c. 1076.] The contention can be disposed of briefly. The general proposition stated as a premise is, of course, well established; but the cases uniformly hold the defense of fellow-service is available against co-employees responsible for the construction of a scaffold, despite the statute (Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934; Williams v. Ransom, 234 Mo. 72, 75, 136 S. W. 349; Van Bibber v. Swift & Co., 286 Mo. 317, 339, 228 S. W. 69); and it makes no difference that respondent was present during the building of that part of the scaffold which later broke, since he did not direct the work and appellant and his fellow-servant had engaged to furnish their own place of work. [Adair v. K. C. Terminal Ry. Co., 282 Mo. 133, 156-7, 220 S. W. 920.]

III. Appellant's final assignment is that the cause should be reversed because the undisputed evidence shows Swope was a vice-principal and not the fellow-servant of appellant. This contention, likewise, was not made at the trial and is urged on the theory that it would present an insurmountable barrier to a verdict for respondent if the case were retried. The cases cited are Prapuolenis v. Geobel Construction Co., supra (279 Mo. l. c. 368, 213 S. W. l. c. 795), and Curtie v. Koch (Mo. App.), 282 S. W. 1045. It is said the record in this case shows Swope was a carpenter and the appellant only a common laborer, and that the respondent admitted he hired appellant to *help* Swope. This, in the light of the foregoing authorities, is taken to establish as a matter of law that Swope was a superior servant or straw boss over appellant.

We are unable to hold with appellant on this contention for two reasons. In the first place, a party is bound on appeal by his trial theory. [St. Louis v. Wright Contracting Co., 210 Mo. 491, 502, 109 S. W. 6.] It would be unjust to foreclose respondent here on an issue that was neither tendered nor developed at the trial. Furthermore, the record as it stands does not show Swope was a carpenter of such skill and experience as to warrant a conclusive inference (if that would be proper at all) that he outranked appellant in the work at hand; and there was no direct testimony on the point. Appellant's statement that he engaged appellant to "help" Swope does not necessarily signify an employment as an inferior servant.

In the second place, the two cases relied on by appellant do not sustain his position. In the Prapuolenis case it was conceded a carpenter and a general laborer could be and were fellow-servants in taking down certain timber forms, though the laborer was simply passing on the detached boards to another laborer, and the point of decision was that the carpenter had previously constructed the scaffold on which they were working, unassisted by the laborer—the exact fact which the respondent denies in the case at bar and thereby taken out of the realm of admitted facts raising only issues of law. In the Curtie-Koch case, likewise, the defective scaffold had been built before the laborer was employed. It is true the Springfield Court of Appeals says in the early part of the opinion that fact is not decisive, yet later on in giving the reasons for its decision it sets it out as one of them.

The theory of the Curtie-Koch case seems to be that the status of an employee—as a fellow-servant or not—is to be determined by his capacity or training, rather than by the scope of his authority. We cannot agree with it. The decision refers to the oft repeated definition that "those are fellow-servants who are so related and associated in their work that they can observe and influence each other's conduct and report delinquencies to a common correcting power," and from that argues that if one servant has not the knowledge or capacity to judge of the conduct of another they cannot be fellow-servants. This we think is fallacious. The comparative knowledge, age and experience of the two servants may be and often is a circumstance of strong evidential value, but the ultimate question is as to the extent of the alleged vice-principal's authority to represent the master. [Funk v. Fulton Iron Works, 311 Mo. 77, 88, 277 S. W. 566; Bien v. St. Louis Transit Co., 108 Mo. App. 399, 407, 409, 83 S. W. 986; 39 C. J. sec. 715, p. 601, and sec. 717, p. 608; 18 R. C. L. sec. 218, p. 748; 4 Labatt, Master & Servant (2 Ed.) secs. 1447, 1449, pp. 4196, 4199; N. C. & St. L. R. R. Co. v. Wheless, 78 Tenn. 741, 746, 43 Am. Rep. 317.]

IV. There remain two questions which have been brought into the case by the respondent. He maintains the order granting the new trial should be affirmed even if the court's action cannot be sustained on the ground it specified, because the refusal of two of his instructions, numbered 3 and 4, was error. While it is unnecessary to consider these assignments, since we have already indicated our conclusion that the ruling *nisi* is beyond the reach of this court, yet we shall do so inasmuch as they will be encountered on a retrial.

Respondent's Instruction No. 3 told the jury, in substance, that even though the scaffold was constructed by Swope without the assistance of appellant, yet if the defect therein was latent and of such nature that it could not have been discovered by the exercise of ordinary care on respondent's part, their verdict should be for him. We think it clear that the learned trial court ruled correctly in rejecting this instruction. Its whole theory is wrong. It hypothesizes the fact that Swope alone built the scaffold. If this is so he was a vice-principal as to the appellant when the latter was afterward assigned to work on the scaffold as a completed instrumentality. [Combs v. Roundtree Construction Co., 205 Mo. 367, 379 et seq., 104 S. W. 77; Prapuolenis v. Goebel Const. Co., 279 Mo. l. c. 369, 213 S. W. l. c. 795.] The infirmity in the structure arose out of Swope's negligence in constructing it, a fact of which he had, or ought to have had, notice the instant the dereliction was committed; and notice to him was notice to his master, the respondent, however short the time. [Bodenmueller v. Columbia Box Co. (Mo. App.), 237 S. W. 879, 881.] The negligence of a vice-principal, or the result of it, is not a latent defect.

V. Respondent's refused Instruction 4 was as follows:

"The court instructs the jury that the plaintiff's case is based upon the fact that he, the plaintiff, and witness Swope were not fellow-servants, and the court further instructs you in this connection that the burden of proof is upon the plaintiff to prove the absence of such relationship."

In support of the instruction the respondent cites the following cases which hold all servants of a common master engaged in the same employment are prima-facie fellow-servants, and that the burden of proving the non-existence of the relation rests on him who asserts it: McGowan v. St. L. & I. M. R. R. Co., 61 Mo. 528, 532; Blessing v. St. L. K. C. & N. Ry. Co., 77 Mo. 410, 413; Sheehan v. Prosser, 55 Mo. App. 569, 574; Shaw v. Bambrick-Bates Const. Co., 102 Mo. App. 666, 671; Ryan v. Christian Board of Publication (Mo. App.), 199 S. W. 1030, 1031.

On the related question as to whether the fact of fellow-service may be shown under a general denial the weight of Missouri authority harmonizes with the foregoing decisions and is in the affirmative.

[Kaminski v. Tudor Iron Works, 167 Mo. 462, 470, 67 S. W. 221; Pecher v. Howd, 217 Mo. 113, 118, 273 S. W. 752; Hoover v. Western Coal & Mining Co., 160 Mo. App. 326, 332, 142 S. W. 465; Sheehan v. Prosser, supra (55 Mo. App. l. c. 575).] But to the contrary is Bennett v. O'Maley Tractor Co., 209 Mo. App. 619, 626, 238 S. W. 144. For the cases elsewhere—which, likewise, are discordant—see 39 C. J. sec. 1173, p. 939, sec. 1180, p. 952, and sec. 1214, p. 998; 18 R. C. L. sec. 197, p. 719; 4 Labatt, Master & Servant (2 Ed.) sec. 1608, p. 4909; Ann. Cas. 1913A, p. 981, note.

Defending the trial court's ruling the appellant asserts: (1) that the scaffold statute heretofore mentioned (Sec. 6802, R. S. 1919) cast the burden on the *respondent* to acquit himself of negligence, even in respect of his fellow-servant defense; and (2) that since the appellant's petition and proof counted on the negligence of the master alone (i. e., that the defective scaffold was tendered to the appellant as a safe, completed structure) and the issue of fellow-service was injected into the case by the respondent on new facts, therefore it was an affirmative defense on which the respondent carried the burden of proof.

On the first of these points the appellant refers us to the Prapuolenis case, supra (279 Mo. l. c. 368, 213 S. W. l. c. 795), and the Stafford case, supra (113 Mo. App. l. c. 721, 88 S. W. l. c. 1131); but we do not understand the doctrine of these cases goes further than to require respondent to account to persons protected by the statute for *the falling of the scaffold* on a theory consistent with his freedom from negligence. As already said the burden was still on appellant to establish the other elements of his case, among which one was that the respondent furnished the scaffold. The respondent invoked the fellow-servant rule for the purpose of showing he did not furnish the scaffold and that appellant was responsible for its construction; and under the foregoing cases the statute did not put the burden on him on that issue.

On the other theory—respondent's second point—it will be seen from the texts cited there is good authority for appellant's position that the burden was on respondent since he, and not appellant, brought the fellow-servant issue into the case. But it does not appear to be in accord with the law of this State. Fundamentally, the fellow-servant rule is a special application of the doctrine of assumption of risk. The negligence of fellow-servants is one of the ordinary hazards which a servant assumes as by implication in his contract of employment. [Parker v. H. & St. J. R. R. Co., 109 Mo. 362, 380, 19 S. W. 1119, 18 L. R. A. 802; Dixon v. C. & A. R. R. Co., 109 Mo. 413, 423, 19 S. W. 412, 18 L. R. A. 792; 39 C. J. sec. 645, p. 540; 4 Labatt, Master & Servant (2 Ed.) sec. 1395, p. 4014.] And while there are some cases holding assumption of risk is a defense which must be

affirmatively pleaded and proven like contributory negligence, such as: Fisher v. Central Lead Co., 156 Mo. 479, 495, 56 S. W. 1107; McDonald v. Cent. Ill. Const. Co., 183 Mo. App. 415, 423, 166 S. W. 1087; Campbell v. Hoosier Stave & Lbr. Co., 146 Mo. App. 681, 690, 125 S. W. 845; yet the overwhelming weight of authority in this State is to the contrary, that the defense may be shown under a general denial: Curtis v. McNair, 173 Mo. 270, 279, 73 S. W. 167; Dakan v. Chase & Son Mercantile Co., 197 Mo. 238, 266, 94 S. W. 944; George v. St. L. & S. F. R. R. Co., 225 Mo. 364, 411, 125 S. W. 196; Harbacek v. Fulton Iron Works, 287 Mo. 479, 487, 229 S. W. 803; Dixon v. Frazier-Davis Const. Co. (Mo., Div. 2), 298 S. W. 827, 829; Pringle v. Carthage Quarry Co. (Mo. App.), 199 S. W. 561, 562.

There are decisions holding that in suits under the Federal Employers' Liability Act assumption of risk is an affirmative defense which must be pleaded by the defendant (Adams v. Q. O. & K. C. R. R. Co., 287 Mo. 535, 553, 229 S. W. 790; Halt v. C. C. C. & St. L. Ry. Co. (Mo., Banc), 279 S. W. 148, 152); but that, we take it, is because the Federal act permits certain extraordinary risks, such as negligence of the master, to be assumed by the servant in given circumstances (Hoch v. St. L. & S. F. Ry. Co., 315 Mo. 1199, 1209, 287 S. W. 1047); and this kind of assumption of risk *is* an affirmative defense in the nature of confession and avoidance, which must be pleaded and established by the defendant. [Patrum v. St. L. & S. F. Ry. Co., 259 Mo. 109, 124, 168 S. W. 622.]

And so it appears the decisions on the precise question, as to the burden of proof in fellow-servant cases, the decisions on the related question of pleading, and the decisions on the analogous question of assumed risk, all sustain respondent's view. Our conclusion, therefore, is that respondent's refused Instruction 4 correctly declared the law; but we do not approve the form of the instruction. It says "the plaintiff's case is based" on the fact that he (appellant) and Swope were not fellow-servants; and reads as if the appellant conceded there was a common employment of him and Swope in the building of the scaffold. This can be remedied on a retrial.

The order granting a new trial is affirmed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.